IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| NAYA GRACE TAYLOR,<br><br>    Plaintiff,<br><br> v.<br><br>AJA LYSTILA, M.D.,<br><br>CARLE HEALTH CARE INCORPORATED, an Illinois corporation, d/b/a CARLE PHYSICIAN GROUP,<br><br>CARLE FOUNDATION PHYSICIAN SERVICES, LLC, and<br><br>THE CARLE FOUNDATION, an Illinois corporation,<br><br>    Defendants. | Civil Action No. 2:14-cv-2072<br><br>**Equitable Relief Is Sought** |

## COMPLAINT

Plaintiff NAYA GRACE TAYLOR ("Plaintiff") for her Complaint against Defendants AJA LYSTILA, M.D., CARLE HEALTHCARE INCORPORATED, d/b/a CARLE PHYSICIAN GROUP, CARLE FOUNDATION PHYSICIAN SERVICES, LLC, and THE CARLE FOUNDATION (collectively, "Defendants"), alleges the following:

### PRELIMINARY STATEMENT

1.  This action seeks injunctive and declaratory relief, as well as damages, to halt Defendants' discrimination on the basis of Plaintiff's sex in violation of section 1557(a) ("Section 1557(a)") of the Patient Protection and Affordable Care Act (codified at 42 U.S.C. § 18116(a)) ("Affordable Care Act"). Specifically, Plaintiff

seeks redress for Defendants' violation of federal law by denying Plaintiff health care services because she is a transgender woman.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under section 1557(a) of the Affordable Care Act, 42 U.S.C. § 18116(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because one or more of the Defendants reside in the Central District of Illinois and because all or a substantial part of the events giving rise to the claims in this action occurred and are occurring in the Central District of Illinois.

4. This matter is properly brought in the Urbana Division because the entity Defendants' are principally located in Champaign County, the Defendant doctor maintains an office in Coles County, and the Plaintiff resides in Coles County. Further, a substantial part of the events giving rise to the claims in this action occurred and are occurring in Coles County.

5. Declaratory relief is authorized pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202. A declaration of the law is necessary and appropriate to determine the respective rights and duties of the parties to this action.

## PARTIES

6. Plaintiff Naya Grace Taylor ("Naya") is a transgender woman who is a citizen of Illinois residing in Mattoon.

7. Defendant Aja Lystila, M.D. ("Dr. Lystila") is a citizen of Illinois who maintains an office at 2512 Hurst Drive, Mattoon, IL 61938. Dr. Lystila is a medical doctor licensed by the State of Illinois and board certified in Family Medicine by the American Board of Family Medicine.

8. Defendant Carle Health Care Incorporated, d/b/a Carle Physician Group, (the "Physician Group") is a not-for-profit corporation organized under the laws of the State of Illinois with its principal place of business at 611 W. Park, Urbana, IL 61801. It may be served with process through its registered agent, James C. Leonard, at the same address.

9. Defendant Carle Foundation Physician Services, LLC ("Physician LLC") is a domestic limited liability company organized under the laws of the State of Illinois with its principal place of business at 611 W. Park, Urbana, IL 61801. It may be served with process through its registered agent, James C. Leonard, at the same address.

10. Defendant The Carle Foundation ("Foundation") is a not-for-profit corporation organized under the laws of the State of Illinois with its principal place of business at 611 W. Park, Urbana, IL 61801. It may be served with process through its registered agent, James C. Leonard, at the same address.

11. The Foundation is an integrated group of health care services ("Carle Group") that includes, as its subsidiaries (or otherwise related entities), the Physician Group and the Physician LLC. The Carle Group provides its services under the umbrella designation "Carle" and its logo, not readily identifying which

entities are participating in providing particular services. Upon information and belief, Dr. Lystila is affiliated professionally with one or more of the entity co-defendants.

12. Defendants provide health care services or participate in healthcare-related programs or activities, at least a part of which directly or indirectly receive federal financial assistance, including Medicaid and Medicare.

## FACTS

13. Gender identity is a deeply-rooted, internal psychological identification as male or female. According to contemporary medical knowledge and the consensus among experts in the field, gender identity cannot be changed and attempts to change a person's gender identity are futile and unethical.

14. Although Naya Grace Taylor ("Naya") was assigned the sex of male at birth, she has a strong, consistent and deeply-rooted female gender identity. Naya has gender dysphoria, formerly known as Gender Identity Disorder and sometimes known as transsexualism.

15. Gender dysphoria is a recognized, serious medical condition identified in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-V").

16. The DSM-V's diagnostic criteria for gender dysphoria are evidence of a marked difference between the individual's expressed/experienced gender and the gender others would assign him or her, and it must continue for at least six months.

This condition causes clinically significant distress or impairment in social, occupational, or other important areas of functioning.

17. Naya can recall having identified strongly as female since she was four years old.

18. The World Professional Association for Transgender Health ("WPATH") is the leading professional association for surgeons, doctors, medical researchers and others who specialize in the medical treatment of people with gender dysphoria. Based on decades of clinical experience and research, WPATH has promulgated medical standards of care for treating patients with gender dysphoria.

19. The WPATH Standards of Care for Gender Identity Disorders ("Standards of Care") recognize that treatment is medically necessary for most people with gender dysphoria. The Standards of Care provide for an individualized assessment of medically necessary treatment for gender dysphoria. The components of treatment may include the administration of hormone therapy; "real-life experience" (living full-time presenting in the gender corresponding with the person's gender identity); psychotherapy for purposes such as exploring gender identity, role, and expression; and sex reassignment surgery.

20. Naya has been receiving health care related services from the Mattoon clinic associated with the Carle Group for more than a decade. Until just recently, Naya had been seeing Dr. Lystila as her primary health care provider at the clinic.

The job of primary care physicians is to look after the overall health of their patients.

21. In early 2013, after consulting with a licensed social worker who counseled Naya that she was ready to begin hormone treatment, Naya decided to seek female hormone therapy.

22. Naya ordered hormones herself on the internet and began self-administering them without doctor supervision.

23. Self-administering feminizing endocrine agents, whether prescribed by a clinician or obtained through other means such as internet purchase, can pose risks to one's health if not appropriately monitored by a medical professional.

24. Naya approached Dr. Lystila about the treatment that had been recommended, but Dr. Lystila refused her treatment because Dr. Lystila claimed that she was not "experienced" in providing hormone treatments to transgender patients.

25. When transgender patients present for care already taking feminizing endocrine agents, a primary care clinician who is uncomfortable providing long-term endocrine therapy should, at a minimum, provide a "bridging" prescription for hormones while assisting the patient in finding a clinician who can provide access to long-term care. The patient's current regimen should be assessed for safety and drug interactions, with safer medications or doses suggested when indicated.

26. In fall of 2013 at the request of a physician specialist Naya was also seeing at the clinic, Naya asked Dr. Lystila to perform blood work to check her

hormone levels. Although Dr. Lystila permitted her physician's assistant to draw Naya's blood and order the results, she indicated they would not provide any further blood work or monitoring in connection with Naya's transition-related care, including hormone treatments or monitoring.

27.     Upon information and belief, Dr. Lystila and other doctors at the clinic regularly monitor the hormone levels of cisgender[1] patients.

28.     Later in October 2013, Naya requested a prescription for transition-related hormones on an emergency basis when her hormone delivery from the internet was delayed. Dr. Lystila refused, claiming that no one at Carle was trained in "this type" of hormone replacement.

29.     In reality, many of the screening tasks involved in long-term hormone maintenance fall within the scope of primary care rather than specialist care. Even a primary care provider who has no experience with transgender health should be able to manage endocrinologic manipulation of secondary sex characteristics with the ability to consult an endocrinologist. Upon information and belief, the Carle Group's clinics in Mattoon/Charleston have doctors who specialize in endocrinology, gynecology, and women's services.

30.     The prospect of abruptly discontinuing hormone therapy posed a significant risk to Naya's health and caused her great distress.

31.     Dr. Lystila has consistently refused to provide Naya any transition-related care.

---

[1] Cisgender is a term used to describe a person whose self-identity conforms with the gender that corresponds to the sex he or she was assigned at birth – *i.e.*, someone who is not transgender.

32. When Naya protested to the clinic that she was being denied transition-related care by the clinic, she was told that the clinic did not "have to treat people like you."

33. After pursing the issue, Dianne Kauffman with the Carle Group's clinic in Mattoon/Charleston told Naya that, because the clinic has Middle Eastern doctors and they have religious beliefs, they do not have to treat "people like you."

**CLAIM FOR RELIEF**
**(Discrimination because of sex in violation**
**of section 1557(a) of the Affordable Care Act)**

34. Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained above.

35. To ensure equal access to health care under the Affordable Care Act, Congress placed robust antidiscrimination requirements on health care providers that profit from the billions of federal dollars flowing into the health care market.

36. One such safeguard is Section 1557(a), the non-discrimination provision which expressly prohibits health care providers that receive federal funds, as do Defendants, from discriminating against any individual on the basis of sex for purpose of providing health services. Indeed, Section 1557(a) is the first federal civil rights law to prohibit sex discrimination in health care.

37. More specifically, Section 1557(a) provides that "[A] n individual shall not, on the ground prohibited under… title IX of the Education Amendments of 1972 (20 USC 1681 et seq.)… be excluded from participation in, be denied benefits of, or be subjected to discrimination under, any health program or activity, any part

of which is receiving Federal financial assistance, including credits, subsidies or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under … title IX … shall apply for purposes of violations of this subsection."

38. Section 1557(a)'s sex discrimination prohibition extends to claims of discrimination based on gender identity or failure to conform to stereotypical notions of masculinity or femininity.

39. The Office of Civil Rights of the Department of Health and Human Services has confirmed that, because sex, as it is used in this context, includes gender identity, transgender individuals are entitled to protection against discrimination in access to health care.

40. Defendants meet the qualifications for being a "health program or activity, any part of which is receiving Federal financial assistance" under Section 1557(a).

41. Cisgender women similarly situated to Naya would not have been denied hormone monitoring and treatment by the Carle Group and its physicians.

42. Defendants have violated and continue to violate Section 1557(a) of the Affordable Care Act by intentionally causing Plaintiff to "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial

assistance" based on sex, which is a prohibited ground of discrimination under Title IX.

43. Plaintiff has been aggrieved by this violation of Section 1557(a) in the denial of necessary medical care.

44. Declaratory and injunctive relief is required to define Naya's rights under Section 1557(a), to remedy the Defendants' violation of Section 1557(a), and to secure ongoing compliance with the antidiscrimination provisions of the Affordable Care Act.

45. Plaintiff has been harmed as a result of Defendants' conduct and is entitled to compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter an Order

(a) Declaring that Defendants' conduct in denying transition-related care to Plaintiff Naya Grace Taylor because of her sex and transgender status violates non-discrimination provisions of the Affordable Care Act;

(b) Enjoining Defendants from denying transition-related care to Plaintiff Naya Grace Taylor because of her sex and transgender status;

(c) Awarding damages in accordance with the proof presented;

(d) Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b); and

(e) Awarding other equitable and further relief as the Court deems just and proper.

Dated: April 15, 2014                    Respectfully submitted,

                                         LAMBDA LEGAL DEFENSE AND
                                         EDUCATION FUND, INC.

                                         by: */s/ Kenneth Dale Upton, Jr.*
                                              Kenneth Dale Upton, Jr.
                                                ***Lead Counsel***

                                         KENNETH DALE UPTON, JR.
                                         3500 Oak Lawn Avenue, Suite 500
                                         Dallas, TX 75219
                                         Telephone:   (214) 219-8585
                                         Facsimile:   (214) 219-4455
                                         E-mail:      kupton@lambdalegal.org

                                               -and-

                                         CHRISTOPHER R. CLARK
                                         105 West Adams, Suite 2600
                                         Chicago, IL 60603
                                         Telephone: (312) 663-4413
                                         Facsimile: (312) 663-4307
                                         E-mail:    cclark@lambdalegal.org

                                               -and-

                                         M. DRU LEVASSEUR
                                         120 Wall Street, 19th Floor
                                         New York, NY  10005-3919
                                         Telephone: (212) 809-8585
                                         Facsimile: (212) 809-0055
                                         Email:     dlevasseur@lambdalegal.org

                                         ATTORNEYS FOR PLAINTIFF
                                         NAYA GRACE TAYLOR

## CERTIFICATE OF SERVICE

This is the Original Complaint.  Waiver of service will be requested for each defendant in accordance with Fed. R. Civ. P. 4(d)(1)(A) or, in the absence of waiver, Summons will be served as further required by that rule.

                                              *s/ Kenneth Dale Upton, Jr.*