IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| NAYA GRACE TAYLOR,<br><br>   Plaintiff,<br><br>v.<br><br>AJA LYSTILA, M.D., CARLE HEALTH CARE INCORPORATED, an Illinois corporation, d/b/a CARLE PHYSICIAN GROUP, CARLE FOUNDATION PHYSICIAN SERVICES, LLC, and THE CARLE FOUNDATION, an Illinois corporation,<br><br>   Defendants. | Civil Action No. 2:14-cv-2072 |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendants Carle Health Care Incorporated d/b/a Carle Physician Group, Carle Foundation Physician Services, LLC, and The Carle Foundation (collectively, "Defendants"), by and through their attorneys, SEYFARTH SHAW LLP, submits their Answer and Affirmative Defenses to Plaintiff's Complaint:

### PRELIMINARY STATEMENT

**COMPLAINT ¶1:**

This action seeks injunctive and declaratory relief, as well as damages, to halt Defendants' discrimination on the basis of Plaintiffs sex in violation of section 1557(a) ("Section 1557(a)") of the Patient Protection and Affordable Care Act (codified at 42 U.S.C. § 18116(a)) ("Affordable Care Act"). Specifically, Plaintiff seeks redress for Defendants' violation of federal law by denying Plaintiff health care services because she is a transgender woman.

**ANSWER:**

Defendants admit that Plaintiff purports to assert claims against Defendants for violation of § 1557(a) of the Patient Protection and Affordable Care Act, but denies that Defendants

violated any federal law, including § 1557(a), and denies that Plaintiff is entitled to any relief.

Upon information and belief, Defendants admit that Plaintiff is a transgender woman.

Defendants deny any remaining allegations in Paragraph 1.

## JURISDICTION AND VENUE

**COMPLAINT ¶2:**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under section 1557(a) of the Affordable Care Act, 42 U.S.C. § 18116(a).

**ANSWER:**

Defendant admits that Plaintiff is bringing this action alleging claims pursuant to Section 1557(a) and that this Court has jurisdiction over those claims, but denies that it engaged in any wrongdoing or discriminated against Plaintiff in any way.

**COMPLAINT ¶3:**

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because one or more of the Defendants reside in the Central District of Illinois and because all or a substantial part of the events giving rise to the claims in this action occurred and are occurring in the Central District of Illinois.

**ANSWER:**

Defendant admits that venue is proper in this Court, but denies that it engaged in any wrongdoing or discriminated against Plaintiff in any way.

**COMPLAINT ¶4:**

This matter is properly brought in the Urbana Division because the entity Defendants' are principally located in Champaign County, the Defendant doctor maintains an office in Coles County, and the Plaintiff resides in Coles County. Further, a substantial part of the events giving rise to the claims in this action occurred and are occurring in Coles County.

**ANSWER:**

Defendant admits that it resides in Champaign County and maintains a facility in Coles County. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4 of the Complaint.

**COMPLAINT ¶5:**

Declaratory relief is authorized pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202. A declaration of the law is necessary and appropriate to determine the respective rights and duties of the parties to this action.

**ANSWER:**

The allegations in Paragraph 5 of the Complaint state legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 5 of the Complaint

## PARTIES

**COMPLAINT ¶6:**

Plaintiff Naya Grace Taylor ("Naya") is a transgender woman who is a citizen of Illinois residing in Mattoon.

**ANSWER:**

Upon information and belief, Defendants admit the allegations in Paragraph 6 of the Complaint.

**COMPLAINT ¶7:**

Defendant Aja Lystila, M.D. ("Dr. Lystila") is a citizen of Illinois who maintains an office at 2512 Hurst Drive, Mattoon, IL 61938. Dr. Lystila is a medical doctor licensed by the State of Illinois and board certified in Family Medicine by the American Board of Family Medicine.

**ANSWER:**

Defendants admit the allegations in Paragraph 7 of the Complaint.

**COMPLAINT ¶8:**

Defendant Carle Health Care Incorporated, d/b/a Carle Physician Group, (the "Physician Group") is a not-for-profit corporation organized under the laws of the State of Illinois with its principal place of business at 611 W. Park, Urbana, IL 61801. It may be served with process through its registered agent, James C. Leonard, at the same address.

**ANSWER:**

Defendants admit the allegations in Paragraph 8 of the Complaint.

**COMPLAINT ¶9:**

Defendant Carle Foundation Physician Services, LLC ("Physician LLC") is a domestic limited liability company organized under the laws of the State of Illinois with its principal place of business at 611 W. Park, Urbana, IL 61801. It may be served with process through its registered agent, James C. Leonard, at the same address.

**ANSWER:**

Defendants admit the allegations in Paragraph 9 of the Complaint.

**COMPLAINT ¶10:**

Defendant The Carle Foundation ("Foundation") is a not-for-profit corporation organized under the laws of the State of Illinois with its principal place of business at 611 W. Park, Urbana, IL 61801. It may be served with process through its registered agent, James C. Leonard, at the same address.

**ANSWER:**

Defendants admit the allegations in Paragraph 10 of the Complaint.

**COMPLAINT ¶11:**

The Foundation is an integrated group of health care services ("Carle Group") that includes, as its subsidiaries (or otherwise related entities), the Physician Group and the Physician LLC. The Carle Group provides its services under the umbrella designation "Carle" and its logo, not readily identifying which entities are participating in providing particular services. Upon information and belief, Dr. Lystila is affiliated professionally with one or more of the entity co-defendants.

**ANSWER:**

Defendants admit that The Carle Foundation is the not-for-profit parent company of an

integrated network of healthcare services. Defendant admits that Dr. Lystila is a physician

employed by Carle Health Care Incorporated d/b/a Carle Physician Group. Defendants denies the remaining allegations in Paragraph 11 of the Complaint

**COMPLAINT ¶12:**

Defendants provide health care services or participate in healthcare-related programs or activities, at least a part of which directly or indirectly receive federal financial assistance, including Medicaid and Medicare.

**ANSWER:**

Defendant admits to receiving federal financial assistance by participating in Medicare and Medicaid programs.

<b>FACTS</b>

**COMPLAINT ¶13:**

Gender identity is a deeply-rooted, internal psychological identification as male or female. According to contemporary medical knowledge and the consensus among experts in the field, gender identity cannot be changed and attempts to change a person's gender identity are futile and unethical.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint.

**COMPLAINT ¶14:**

Although Naya Grace Taylor ("Naya") was assigned the sex of male at birth, she has a strong, consistent and deeply-rooted female gender identity. Naya has gender dysphoria, formerly known as Gender Identity Disorder and sometimes known as transsexualism.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

**COMPLAINT ¶15:**

Gender dysphoria is a recognized, serious medical condition identified in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-V").

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

**COMPLAINT ¶16:**

The DSM-V's diagnostic criteria for gender dysphoria are evidence of a marked difference between the individual's expressed/experienced gender and the gender others would assign him or her, and it must continue for at least six months. This condition causes clinically significant distress or impairment in social, occupational, or other important areas of functioning.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint.

**COMPLAINT ¶17:**

Naya can recall having identified strongly as female since she was four years old.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint.

**COMPLAINT ¶18:**

The World Professional Association for Transgender Health ("WPATH") is the leading professional association for surgeons, doctors, medical researchers and others who specialize in the medical treatment of people with gender dysphoria. Based on decades of clinical experience and research, WPATH has promulgated medical standards of care for treating patients with gender dysphoria.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint.

**COMPLAINT ¶19:**

The WPATH Standards of Care for Gender Identity Disorders ("Standards of Care") recognize that treatment is medically necessary for most people with gender dysphoria. The Standards of Care provide for an individualized assessment of medically necessary treatment for

gender dysphoria. The components of treatment may include the administration of hormone therapy; "real-life experience" (living full-time presenting in the gender corresponding with the person's gender identity); psychotherapy for purposes such as exploring gender identity, role, and expression; and sex reassignment surgery.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint.

**COMPLAINT ¶20:**

Naya has been receiving health care related services from the Mattoon clinic associated with the Carle Group for more than a decade. Until just recently, Naya had been seeing Dr. Lystila as her primary health care provider at the clinic. The job of primary care physicians is to look after the overall health of their patients.

**ANSWER:**

Defendants admit that Plaintiff has been receiving health care services at the Mattoon clinic since at least 1999. Defendants further admit that Dr. Lystila became Plaintiff's primary care physician in 2008. Defendants deny the remaining allegations in Paragraph 20 of the Complaint.

**COMPLAINT ¶21:**

In early 2013, after consulting with a licensed social worker who counseled Naya that she was ready to begin hormone treatment, Naya decided to seek female hormone therapy.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint.

**COMPLAINT ¶22:**

Naya ordered hormones herself on the internet and began self-administering them without doctor supervision.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint.

**COMPLAINT ¶23:**

Self-administering feminizing endocrine agents, whether prescribed by a clinician or obtained through other means such as internet purchase, can pose risks to one's health if not appropriately monitored by a medical professional.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint.

**COMPLAINT ¶24:**

Naya approached Dr. Lystila about the treatment that had been recommended, but Dr. Lystila refused her treatment because Dr. Lystila claimed that she was not "experienced" in providing hormone treatments to transgender patients.

**ANSWER:**

Defendants deny each and every allegation set forth in Paragraph 24 of the Complaint.

**COMPLAINT ¶25:**

When transgender patients present for care already taking feminizing endocrine agents, a primary care clinician who is uncomfortable providing long-term endocrine therapy should, at a minimum, provide a "bridging" prescription for hormones while assisting the patient in finding a clinician who can provide access to long-term care. The patient's current regimen should be assessed for safety and drug interactions, with safer medications or doses suggested when indicated.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint.

**COMPLAINT ¶26:**

In fall of 2013 at the request of a physician specialist Naya was also seeing at the clinic, Naya asked Dr. Lystila to perform blood work to check her hormone levels. Although Dr. Lystila permitted her physician's assistant to draw Naya's blood and order the results, she

indicated they would not provide any further blood work or monitoring in connection with Naya's transition-related care, including hormone treatments or monitoring.

**ANSWER:**

Defendants admit that Plaintiff told Dr. Lystila's nurse, Kelly Holt, that Dr. Dolan, Plaintiff's infectious disease specialist, requested lab work to check her hormone levels. Defendants deny the remaining allegations in Paragraph 26 of the Complaint.

**COMPLAINT ¶27:**

Upon information and belief, Dr. Lystila and other doctors at the clinic regularly monitor the hormone levels of cisgender[1] patients.

**ANSWER:**

Defendants deny each and every allegation set forth in Paragraph 27 of the Complaint. As to footnote one in Paragraph 27 of the Complaint, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

**COMPLAINT ¶28:**

Later in October 2013, Naya requested a prescription for transition-related hormones on an emergency basis when her hormone delivery from the internet was delayed. Dr. Lystila refused, claiming that no one at Carle was trained in "this type" of hormone replacement.

**ANSWER:**

Defendants deny each and every allegation set forth in Paragraph 28 of the Complaint.

**COMPLAINT ¶29:**

In reality, many of the screening tasks involved in long-term hormone maintenance fall within the scope of primary care rather than specialist care. Even a primary care provider who has no experience with transgender health should be able to manage endocrinologic manipulation of secondary sex characteristics with the ability to consult an endocrinologist. Upon information and belief, the Carle Group's clinics in Mattoon/Charleston have doctors who specialize in endocrinology, gynecology, and women's services.

---

[1] Cisgender is a term used to describe a person whose self-identity conforms with the gender that corresponds to the sex he or she was assigned at birth — *i.e.*, someone who is not transgender.

9

**ANSWER:**

Defendant admits that it employs doctors with expertise in endocrinology, gynecology, and women's services.  Defendants deny the remaining allegations in Paragraph 29 of the Complaint.

**COMPLAINT ¶30:**

The prospect of abruptly discontinuing hormone therapy posed a significant risk to Naya's health and caused her great distress.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint.

**COMPLAINT ¶31:**

Dr. Lystila has consistently refused to provide Naya any transition-related care.

**ANSWER:**

Defendants deny the allegation set forth in Paragraph 31 of the Complaint.

**COMPLAINT ¶32:**

When Naya protested to the clinic that she was being denied transition-related care by the clinic, she was told that the clinic did not "have to treat people like you."

**ANSWER:**

Defendants admit that Plaintiff contacted patient relations.  Defendants deny the remaining allegations in Paragraph 32 of the Complaint.

**COMPLAINT ¶33:**

After pursuing the issue, Dianne Kauffman with the Carle Group's clinic in Mattoon/Charleston told Naya that, because the clinic has Middle Eastern doctors and they have religious beliefs, they do not have to treat "people like you."

**ANSWER:**

Defendants deny each and every allegation set forth in Paragraph 33 of the Complaint.

## CLAIM FOR RELIEF

### (Discrimination because of sex in violation of section 1557(a) of the Affordable Care Act)

**COMPLAINT ¶34:**

Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained above.

**ANSWER:**

Defendants incorporate by reference their answers to the above allegations as if fully set forth as their answer to Paragraph 34 of the Complaint.

**COMPLAINT ¶35:**

To ensure equal access to health care under the Affordable Care Act, Congress placed robust antidiscrimination requirements on health care providers that profit from the billions of federal dollars flowing into the health care market.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint.

**COMPLAINT ¶36:**

One such safeguard is Section 1557(a), the non-discrimination provision which expressly prohibits health care providers that receive federal funds, as do Defendants, from discriminating against any individual on the basis of sex for purpose of providing health services. Indeed, Section 1557(a) is the first federal civil rights law to prohibit sex discrimination in health care.

**ANSWER:**

Defendants admit that Section 1557(a) is the non-discrimination provisions of the Patient Protection and Affordable Care Act. Defendants deny the remaining allegations in Paragraph 36 of the Complaint.

**COMPLAINT ¶37:**

More specifically, Section 1557(a) provides that "[A] n individual shall not, on the ground prohibited under... title IX of the Education Amendments of 1972 (20 USC 1681 et seq.)... be excluded from participation in, be denied benefits of, or be subjected to discrimination

under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under ... title IX ... shall apply for purposes of violations of this subsection."

**ANSWER:**

Defendants admit that Complaint Paragraph 37 contains excerpted text from Section 1557(a) of the Patient Protection and Affordable Care Act.

**COMPLAINT ¶38:**

Section 1557(a)'s sex discrimination prohibition extends to claims of discrimination based on gender identity or failure to conform to stereotypical notions of masculinity or femininity.

**ANSWER:**

The allegations in Paragraph 38 of the Complaint state legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 38 of the Complaint.

**COMPLAINT ¶39:**

The Office of Civil Rights of the Department of Health and Human Services has confirmed that, because sex, as it is used in this context, includes gender identity, transgender individuals are entitled to protection against discrimination in access to health care.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 of the Complaint.

**COMPLAINT ¶40:**

Defendants meet the qualifications for being a "health program or activity, any part of which is receiving Federal financial assistance" under Section 1557(a).

**ANSWER:**

The allegations in Paragraph 40 of the Complaint state legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 40 of the Complaint.

**COMPLAINT ¶41:**

Cisgender women similarly situated to Naya would not have been denied hormone monitoring and treatment by the Carle Group and its physicians.

**ANSWER:**

Defendants deny each and every allegation set forth in Paragraph 41 of the Complaint.

**COMPLAINT ¶42:**

Defendants have violated and continue to violate Section 1557(a) of the Affordable Care Act by intentionally causing Plaintiff to "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance" based on sex, which is a prohibited ground of discrimination under Title IX.

**ANSWER:**

Defendants deny each and every allegation set forth in Paragraph 42 of the Complaint.

**COMPLAINT ¶43:**

Plaintiff has been aggrieved by this violation of Section 1557(a) in the denial of necessary medical care.

**ANSWER:**

Defendants deny each and every allegation set forth in Paragraph 43 of the Complaint.

**COMPLAINT ¶44:**

Declaratory and injunctive relief is required to define Naya's rights under Section 1557(a), to remedy the Defendants' violation of Section 1557(a), and to secure ongoing compliance with the antidiscrimination provisions of the Affordable Care Act.

**ANSWER:**

Defendants deny each and every allegation set forth in Paragraph 44 of the Complaint.

**COMPLAINT ¶45:**

Plaintiff has been harmed as a result of Defendants' conduct and is entitled to compensatory damages.

**ANSWER:**

Defendants deny each and every allegation set forth in Paragraph 41 of the Complaint.

### AFFIRMATIVE AND OTHER DEFENSES

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendants assert the following affirmative and other defenses without assuming any burden of production or proof that, pursuant to law, belong to Plaintiff. Defendants reserve the right to amend their answer and to assert any additional defenses and affirmative defenses as may become available or apparent during the course of this litigation.

### FIRST DEFENSE

Defendants at all times acted in good faith and without discriminatory intent.

### SECOND DEFENSE

Plaintiff's claim for relief is barred to the extent she has failed to act reasonably to mitigate her damages.

### THIRD DEFENSE

Some or all of the Complaint fails to state a claim upon which relief can be granted.

### FOURTH DEFENSE

Plaintiff's claim is barred to the extent that Plaintiff's own conduct caused or contributed to her claim.

### FIFTH DEFENSE

Plaintiff's claim is barred by the doctrines of waiver, unclean hands, after-acquired evidence, and/or estoppel.

### SIXTH DEFENSE

Plaintiff cannot sustain her claims against Defendants because Defendants exercised reasonable care in handling Plaintiff's request.

### SEVENTH DEFENSE

Plaintiff is not entitled to punitive damages against Defendants because Defendants made good faith efforts to comply with applicable federal, state, and local laws prohibiting discrimination.

### EIGHTH DEFENSE

All of Defendants' decisions and/or actions were undertaken for legitimate, non-discriminatory, and non-pretextual reasons.

### NINTH DEFENSE

Defendants did not authorize, condone, or ratify any alleged unlawful conduct or statements.

### TENTH DEFENSE

Defendants did not act recklessly or with indifference to the protected rights of Plaintiff.

### ELEVENTH DEFENSE

An award of punitive damages as claimed by Plaintiff in this case would violate the excessive fines clause of the Eighth Amendment to the United States Constitution and the due process clause of the Fourteenth Amendment of the United State Constitution.

**ADDITIONAL RESPONSE**

Defendants currently have insufficient information upon which to form a belief as to whether there may exist additional, as yet unstated, defenses beyond those listed above. Defendants reserve the right to assert additional defenses in the event that discovery indicates additional defenses are appropriate.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief. Defendants prays:

1. That Plaintiffs' Complaint be dismissed in its entirety with prejudice;

2. That Plaintiffs take nothing by reason thereof;

3. That judgment be entered in favor of Defendant;

4. The Defendant be awarded its costs and attorneys' fees; and

5. For such other and further relief that the Court deems just and proper.


DATED:  May 16, 2014                                Respectfully submitted,

                                                    SEYFARTH SHAW


                                                    By:     /s/ Gerald L. Maatman, Jr.
                                                    Gerald L. Maatman, Jr.

Gerald L. Maatman
gmaatman@seyfarth.com
Alexis P. Robertson*
arobertsont@seyfarth.com
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois  60603
Telephone:    (312) 460-5000
Facsimile:    (312) 460-7000

*Attorney for Defendants*

*\*Application for Admission Pending*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Answer and Affirmative Defenses to Plaintiff's Complaint will be served upon Plaintiff's counsel of record through the Court's ECF system on this 16th day of May, 2014:

> Kenneth D. Upton, Jr.
> Lambda Legal Defense and Education Fund, Inc.
> 3500 Oak Lawn Ave
> Suite 500
> Dallas, TX 75219
> kupton@lambdalegal.org
>
> Christopher R. Clark
> Kyle A. Palazzolo
> Lambda Legal Defense and Education Fund, Inc.
> 105 West Adams
> Suite 2600
> Chicago, IL 60603
> cclark@lambdalegal.org
> kapalazzolo@lambdalegal.org
>
> M. Dru Levasseur
> Lambda Legal Defense and Education Fund, Inc.
> National Headquarters
> 120 Wall Street
> 19th Floor
> New York, NY 10005
> dlevasseur@lambdalegal.org

/s/ Gerald L. Maatman, Jr.

Gerald L. Maatman, Jr.